FILED

2009 Jan-21  AM 10:58
U.S. DISTRICT COURT
N.D. OF ALABAMA



THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| GARY ALLEN on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SOUTHERN PRIDE CATFISH, LLC, AMERICAN SEAFOODS GROUP, LLC, ACTION LABOR CONTRACTORS, INC., RANDY RHODES and BENNY BISHOP. | ) ) ) ) ) ) | 7:08-cv-1125-LSC |
| Defendants. | ) | |

## MEMORANDUM OF OPINION

The matter before this Court is Defendant American Seafood Group's ("ASG") Motion for Summary Judgment. (Doc. 18.) ASG asserts that summary judgment should be granted in its favor because it is not Plaintiffs' employer and therefore not liable under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Plaintiffs argue that ASG is liable because it is a "joint employer" of plaintiffs as defined under the Act.

Facts[1]

ASG is a Delaware corporation with its principal place of business in Seattle, Washington and is the parent company of its wholly-owned subsidiary, American Pride Seafoods, LLC, which in turn owns Southern Pride Catfish, LLC ("Southern Pride"). Southern Pride is a Delaware company with its principal place of business in Greensboro, Alabama. Southern Pride's employee records are maintained in Greensboro, Alabama, and Southern Pride provides its own employee handbook. Southern Pride's hourly employees do not work at ASG facilities in Seattle, and other Southern Pride employees do not maintain offices there. Southern Pride's Human Resources Manager and Human Resources Department are not employed with ASG.[2]

---

[1] The facts set out in this opinion are taken from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the non-moving party. *See Info. Sys. & Network Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for the summary judgment purposes only. They may or may not be the "actual" facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] While Defendant's original submission of Matthew Latimer's Affidavit, (Doc. 20-4), stated that ASG and Southern Pride *did* share human resources personnel, this was apparently a typographical error and Defendant's Supplemental Affidavit asserts as much, stating that "[n]o Sourthern Pride Human Resources personnel are employed by ASG. (Doc. 30-2.)

ASG also asserts that Southern Pride's General Manager is not an ASG employee, that Southern Pride's Human Resources personnel are not employed with ASG, ASG is not involved in the hiring and firing of any of Southern Pride's hourly employees, ASG does not set daily work schedules for Southern Pride's hourly employees, ASG does not give work assignments to Southern Pride's hourly employees, ASG does not establish or set the rate of compensation for Southern Pride's hourly employees, ASG does not issue paychecks to Southern Pride's hourly employees, ASG management does not directly supervise Southern Pride's hourly employees, and ASG does not maintain employee records for Southern Pride's hourly employees. Plaintiffs dispute these assertions by pointing to ASG's 10-K Report filed with the Securities and Exchange Commission. Plaintiffs contend that the ASG's statements in the Report show ASG is a business entity that conducts all of its business operations through its subsidiaries and is wholly dependent upon them to pay its debts. Furthermore, Plaintiff contends the Report shows, through various assertions, that ASG acts through its consolidated subsidiaries to the degree that it in fact makes decisions regarding personnel termination and facility closure.

Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met this burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party. *Id*. at 251 (*quoting Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)). "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must

direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

Analysis

A. Joint Employer Liability under the FLSA

The issue of employer status under the FLSA is a question of law. *Antenor v. D&S Farms*, 88 F.3d 925, 929 (11th Cir. 1996); *Aimable v. Long & Scott Farms, Inc.*, 20 F.3d 434, 440 (11th Cir. 1994). An entity's liability under the FLSA is dependent upon whether or not the plaintiff is "employed" under the meaning of the term in the Act. *See* 29 U.S.C. § 203(d)(e)(1) ("[T]he term 'employee' means any individual employed by an employer . . . "). An employer "includes any person acting directly or indirectly in the interest of the employer . . . ." 29 U.S.C. § 203(d). An employer employs a worker if it "suffers or permits" the individual to work. 29 U.S.C. § 203(g). An entity suffers or permits an individual to work if "as a matter of economic reality, the individual is dependent on the entity." *Antenor*, 88 F.3d at 929 (citing *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961)). This definition is a purposefully broad rejection of common law notions of "employer" and is intended to be so in order to

effect the remedial intentions of the FLSA. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945). The implementing regulations for the FLSA make clear that this broad definition of employ, and therefore employer, attaches liability not only to single employers but also "joint employers." 29 C.F.R. § 791.2(a). A joint employment relationship exists "where a single individual stands in the relation of an employee to two or more persons at the same time." *Gonzalez-Sanchez v. International Paper Company*, 346 F.3d 1017, 1020 (11th Cir. 2003). Under the FLSA, "a worker can be economically dependent on, and thus jointly employed by, more than one entity at the same time." *Id.* at 1021 (citing *Antenor*, 88 F.3d at 929).

Despite these well-established principles, the law in the Eleventh Circuit is less than clear on what specific analytic metric is to be used to determine joint employer liability. ASG asserts that the four-part "economic realities test" articulated in *Villareal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997), is the correct test. (Doc. 19.) The inquiry focuses on whether the alleged employer (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules; (3) determined the

rate and method of payment; and (4) maintained employment records. *Id.*
The Plaintiff responds that the actual test is the seven-factor test
articulated in *Charles v. Burton*, 169 F.3d 1322 (11th Cir. 1999). (Doc. 26.)
The court in *Charles* states,

> [t]his court, and the AWPA regulations, have considered the
> following regulatory factors as guidance in determining
> economic dependence, and ultimately, whether an employment
> relationship exists: (1) whether the agricultural employer has
> the power, either alone or through the FLC, to direct, control or
> supervise the workers or the work performed (such control may
> be either direct or indirect, taking into account the nature of
> the work performed and a reasonable degree of contract
> performance oversight and coordination with third parties); (2)
> whether the agricultural employer has the power, either alone
> or in addition to another employer, directly or indirectly, to hire
> or fire, modify the employment conditions, or determine the pay
> rates or the methods of wage payment for the workers; (3) the
> degree of permanency and duration of the relationship of the
> parties, in the context of the agricultural activity at issue; (4)
> the extent to which the services that the workers rendered are
> repetitive, rote tasks requiring skills that are acquired with
> relatively little training; (5) whether the activities that the
> workers performed are an integral part of the overall business
> operation of the agricultural employer; (6) whether the work is
> performed on the agricultural employer's premises, rather than
> on premises that another business entity owns or controls; and
> (7) whether the agricultural employer undertakes responsibilities
> in relation to the workers that employers commonly perform,
> such as preparing and/or making payroll records, preparing
> and/or issuing pay checks, paying FICA taxes, providing workers'
> compensation insurance, providing field sanitation facilities,

> housing or transportation, or providing tools and equipment or
> materials required for the job (taking into account the amount
> of the investment).

*Id*. (citing 29 C.F.R. § 500.20(h)(5)(iv)(A)-(G); *Antenor*, 88 F.3d at 932;

Aimable, 20 F.3d at 439).

The Eleventh Circuit has also propounded a similar multi-factor test

in *Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir. 1996) and *Aimable v. Long*

*& Scott Farms,* 20 F.3d 434 *(*11th Cir. 1994). Additionally, the Department

of Labor has promulgated examples in its regulations of situations where

"joint employment relationship generally will be considered to exist":

> (1) Where there is an arrangement between the employers to share
> the employee's services, as, for example, to interchange employees;
> (2) Where one employer is acting directly or indirectly in the interest
> of the other employer (or employers) in relation to the employee; or
> (3) Where the employers are not completely disassociated with
> respect to the employment of a particular employee and may be
> deemed to share control of the employee, directly or indirectly, by
> reason of the fact that one employer controls, is controlled by, or is
> under common with the other employer.

29 C.F.R. § 791.2(b).

B. Discussion

The Defendant's proffer of support for summary judgment rests essentially on the affidavits of Matthew Latimer, General Counsel for ASG. In his affidavits, Latimer attests the separateness of the two entities, ASG and Southern Pride, and lists indicia of the lack of control and oversight over Southern Pride's employees, their day to day operations, worker compensation , worker termination, and worker employment. This offer of proof speaks directly to the factors articulated in *Villareal*. Plaintiffs counter with reference to ASG's 10-K Report, wherein ASG terms itself and its subsidiaries as "consolidated." Because of the inclusive way ASG decribes its consolidated activities, it is difficult to discern if the activities to which Plaintiff's refer, such as plant closures and employee terminations, can be attributable in whole or part to ASG. In response to the 10-K Report, Defendant asserts that such inclusive styling of a holding or parent company as coterminous with its subsidiaries is simply an artifact of the SEC reporting requirements and not indicia sufficient to impose FLSA liability.

First, this Court has serious doubts that *Villareal* is applicable to the case at bar. That case involved the question of whether a pretrial detainee who provides translation services for the jail is an "employee" under the

FLSA. *Villareal*, 113 F.3d at 206. In finding that a detainee is not an employee, the Eleventh Circuit expressly *rejected* the four-factor "economic realities" test for pretrial detainees. *Id.* ("[We] adopt the reasoning articulated by the Seventh Circuit . . . in rejecting the *Bonnette* four factor test in the prison context.") Furthermore, even if *Villareal* did expressly adopt the test in a way pertinent to the instant case, the question in *Villareal* turned on whether the plaintiff was an employee under the FLSA, not whether a defendant was a joint employer. Defendants do not point to, and our research does not reveal, the Eleventh Circuit's application of the *Villareal* test to the joint employer context. Thus, it does not appear that the single employer test articulated in *Villareal* controls in a case, such as here, where the plaintiff seeks to hold a parent holding company liable under a joint employer theory.

Second, it is also not clear that the *Charles* test is the appropriate test. Several of the *Charles* factors are imported from the AWPA regulations which are specifically promulgated for application to the question of joint liability for farm labor contractors. *See, e.g.*, *Charles*, 169 F.3d at 1329 (citing 29 C.F.R. § 500.20(h)(5)(4)(iv)(A)-(G)). The applicability of the AWPA

regulations, outside of the farm labor contractor context, is questionable.

Finally, while counsel for both sides spend much of their briefs arguing

which test is the proper metric, these tests are, in the end, only guides to

deciding the ultimate question. No matter what factors or elements a court

employs, the central question remains the same: whether the "economic

reality" *of all the circumstances* warrants a finding of a joint employment

relationship. *See Antenor*, 88 F.3d 925, 932 (11th Cir. 1996). Any "[joint

employer test] factors are used because they are indicators of economic

dependence . . . [t]hey are 'aids-tools to be used to gauge the degree of

dependence of alleged employees on the business to which they are

connected. It is dependence that indicates employee status. Each [factor]

must be applied with that ultimate notion in mind.'" *Id.* (citing *Usery v.*

*Pilgrim Equipment Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976)).

It is true that the question of joint employer liability is one of law and

is usually decided at the summary judgment stage. However, this Court also

notes that the motion for summary judgment in this case is very early, no

discovery having been conducted. This Court is aware that Defendant's

affidavit appears to militate, on its face and under the *Villareal* test, in

favor of a finding of no liability under the FLSA. However, as noted above, this Court has serious doubts (though does not decide at this time) that the *Villareal* test is in fact the appropriate test. Likewise, Plaintiff's arguments for the *Charles* test are equally problematic. And, while neither party addresses the Department of Labor regulations in any substantive way, such regulations certainly cannot be ignored. *See Gonzalez-Sanchez v. Int'l Paper Co.*, 346 F.3d 1017, 1020 n.4 (11th Cir. 2003) ("This court . . . accords significant weight to the statutory interpretation of the executive agency charged with implementing the statute being construed where, as here, that interpretation in incorporated in a formally published regulation.").

Despite current uncertainty, the task of this Court remains clear. In deciding a motion for summary judgment, the Court "must determine whether there are genuine issues of material fact and, if not, whether the [putative employers] are entitled to judgment on the question of joint employment as a matter of law; stated differently, we must determine whether the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the [plaintiffs], support a reasonable conclusion that they were employed by the [defendants] for purposes of the  . . .

FLSA." *Antenor*, 88 F.3d at 929.

Plaintiffs' proffer of ASG's 10-K filing, in light of 29 C.F.R. § 791.2(b)(3) and when viewed holistically with an eye toward the economic realities and potential dependence of the plaintiffs upon ASG, renders this Court hesitant to rule as a matter of law that ASG is not a joint employer. It appears to the Court, considering the information presently available, that if ASG, as the ultimate parent of Southern Pride, can be shown to be a decision maker as to the employment of plaintiffs, joint employer liability under § 791.2(b)(3) may attach. Plaintiffs' submission, through the 10-K filing, of ASG's apparent control of personnel employment and plant openings and closings raises a genuine question of material fact, *at this early stage of litigation*, as to whether ASG is a joint employer.

The above conclusion notwithstanding, this Court does express its serious doubts that, at the appropriate stage in this litigation, Plaintiff will be able to prevail in its joint employer argument. The dearth of district and appellate decisions finding parent liability for subsidiary acts speaks to the relative difficulty in attaching joint employer liability in such cases. However, the interests of justice sometimes demand that discovery be

permitted, especially when "premature decision on summary judgment impermissibly deprives the plaintiffs of their right to utilize the discovery process to discover the facts necessary to justify their opposition to the motion." *Vining v. Runyon*, 99 F.3d 1056, 1058 (11th Cir. 1996) (internal punctuation and citations omitted).

## Conclusion

Plaintiffs, in their responsive brief, moved this Court in the alternative under Rule 56(f) to deny Defendant's motion. (Doc. 26.) This motion is supported by an accompanying affidavit. (Doc. 26-5.) Accordingly, Plaintiff's Motion Pursuant to Rule 56(f) is GRANTED. Defendant ASG's Motion for Summary Judgment is DENIED with leave to refile.

Done this 21st day of January 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE